Argued and submitted June 13,
reversed and remanded September 2, 1980

## CITY OF WOOD VILLAGE,
### *Petitioner,*

*v.*

## PORTLAND METROPOLITAN AREA LOCAL GOVERNMENT BOUNDARY COMMISSION,
### *Respondent,*

(No. 1467, CA 16001)

616 P2d 528

William L. Brunner, Portland, argued the cause and filed the brief for petitioner.

Frank W. Ostrander, Assistant Attorney General, Salem, argued the cause for respondent, Boundary Commission. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Matthew R. Baines, Gresham, argued the cause and filed the brief for intervenor-respondent, City of Gresham.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

### GILLETTE, P. J.

This is a petition for judicial review of a decision of the Portland Metropolitan Area Local Government Boundary Commission (Boundary Commission) which approved a proposed annexation to the City of Gresham. The petition was initiated by the owner of the property, Peter McGill, pursuant to ORS 222.170 (the so-called "Triple Majority" rule) and proposed the annexation of approximately 278.88 acres located on the north edge of the present city boundaries, which property is also contiguous to the cities of Troutdale and Wood Village. The Gresham City Council adopted a resolution supporting the annexation and the Boundary Commission approved it. The City of Wood Village appeals that decision. We reverse and remand.

The subject property is agricultural land used for growing nursery stock. It contains five agricultural buildings and one single family residence. The owner intends to continue his nursery operations indefinitely. He has no immediate plans to develop the property and is not seeking city services at the present time. He sought annexation to the City of Gresham because he felt that Gresham can best serve his property in the future. The property is identified as urban on the Regional Plan and "future urban" on Multnomah County's Plan. The City of Wood Village included the McGill property in its Comprehensive Plan and claims that the annexation of the property to Wood Village is necessary to maintain Wood Village's financial integrity as a functioning city unit. The nearby cities of Troutdale and Fairview agree.[1]

---

[1] The issue, in part, before the Boundary Commission was whether Gresham should be allowed to continue to grow at the expense of these smaller cities. The hearing on this proposed annexation, #1467, was combined with the hearing on a proposed annexation, #1447, to the City of Fairview. The City of Gresham expressed an interest in the property involved in that annexation, #1447, also. The hearing demonstrated the different interests involved, *viz.*, the interests of the cities of Wood Village, Troutdale and Fairview on one hand and the interests of Gresham on the other.

Petitioner raises a number of assignments of error on appeal; three of these assignments are inter-related and we deal with them together. Petitioner claims that the Boundary Commission's final order did not adequately consider the required statutory criteria, that the Commission failed to make adequate findings of fact and statements of reasoning, and that its findings and reasons are not supported by reliable, credible and substantial evidence.

Petitioner first focuses on the lack of certain findings. It maintains that the Boundary Commission's final order failed to adequately consider the effect annexation to Gresham of the McGill property would have on the continued viability and financial integrity of Wood Village as a city; that there is no finding that Wood Village cannot adequately service the area or that Gresham can better service the area; that the order fails to adequately consider the effect annexation would have on the financial integrity of Fire District #10; and that the Boundary Commission fails to adequately discuss the effect annexation would have on the people in the "island" area created by the annexation. Petitioner also takes note of the fact that the property owner does not plan to develop his property at the present time and does not desire further city services. This suggests, in petitioner's view, a lack of need for annexation now.

We first consider whether the matters about which petitioner claims the findings are inadequate are, in fact, relevant statutory criteria which the Boundary Commission is required to consider. ORS 199.410(2) sets forth the function and purpose of local Boundary Commissions. They are:

"* * * to provide a method for guiding the creation and growth of cities and special service districts in Oregon in order to prevent the illogical extensions of local government boundaries and to assure adequate quality and quantity of public services and the financial integrity of each unit of local government."

In implementing these purposes, the Boundary Commission, when reviewing a petition for a boundary change, is to

> "* * * consider economic, demographic and sociological trends and projections pertinent to the proposal, past and prospective physical development of land that would directly or indirectly be affected by the proposed boundary change and, except as provided in ORS 197.275, the state-wide planning goals adopted under ORS 197.255." ORS 199.462(1).

■     We turn first to petitioner's contention that Wood Village would be an adequate provider of services. This contention misses the mark, inasmuch as the issue before the Boundary Commission was whether annexation of the McGill property to the *City of Gresham* would be appropriate. The Boundary Commission did not have to consider whether Wood Village could service the area as well or better than Gresham could or whether, in fact, Gresham was a better service provider. It was required to determine whether Gresham would be an *adequate* service provider. We note, however, that the findings do compare the two cities' ability to provide certain city services.[2]

---

[2] The Boundary Commission adopted the following findings and reasons in support of its order:

" *FINDINGS*

"On the basis of the public hearing and the study the Boundary Commission found that:

"1. The territory to be annexed is contiguous to the city and contains 278.88 acres, 1 single family dwelling, 5 agricultural buildings, an estimated population of 2 persons and is evaluated at $1,584,580.

"2. The property owner desires annexation because he feels the city can best serve his property in the future due to topography and location. The property owner does not desire further services at present and intends to continue his nursery operations indefinitely.

"3. The territory is identified as Urban on the Regional Framework Plan. The property is identified as Future Urban on the County Framework and Neighborhood plans, and on the plans of the surrounding cities. All involved units agree on the Future Urban category.

"4. The regional, county and city plans do not identify service areas or indicate future municipal boundaries. Rather, the plans spell out which areas each unit has an interest in, in terms of decisions there possibly affecting the unit. This is in accord with the LCDC "urban planning area" approach of indicating areas of interest but not settling future municipal boundaries as a part of the land use planning process.

"5. A dispute exists between Gresham and the three smaller communities of Fairview, Wood Village and Troutdale over whether this property should ultimately be developed in Gresham or Wood Village. The disagreement centers on the issue of territory and not use of the land.

"6. This action is in accord with LCDC Goals #1, 2, 11, 12 and 14. Other LCDC goals do not apply directly here.

"7. The City of Gresham operates the regional sewage treatment plant for this general area and the area to be annexed is ultimately serviceable by Gresham transmission and collector sewers on the gravity basis. The city could supply water to the property utilizing existing service levels, storage capacity and adjacent service lines. For Wood Village to supply water and sewer to the site would require additional facilities and/or contractual arrangements with Gresham.

"8. Fire protection is currently supplied by Multnomah County RFPD #10 and the level of service is more than adequate for future development. Gresham could supply the service to the site without additional capital outlay at present. The City of Wood Village does not provide fire protection but is part of RFPD #10 which has a '3' rating from the Insurance Service Office which is better than Gresham's '4' rating. However, for residential property owners there is generally no difference in insurance costs between these two ratings.

"9. The City of Gresham could provide 24-hour police protection to the property without additional expenditues. Wood Village provides minimal police protection with one half-time policeman supplemented by general county sheriff coverage. Gresham has a 51-person department of which 36 are sworn officers.

"10. Major streets in the area will likely remain in county jurisdictions regardless of which city annexes the area. Maintenance of internal streets on future development could be adequately handled by Gresham's public works department which includes a 5 - 6 person streets crew. The City of Wood village has a 3-person public works department for handling sewer, water, streets and other public works projects.

"11. Street light could be provided by either city at similar costs and effort since this is basically handled by the power company on a contractual basis.

"12. Planning and building inspection is more centralized in the City of Gresham which has a full-time planning staff and does the bulk

■      Turning next to the question of petitioner's continuing viability, we agree with petitioner that the findings do not consider the effect this annexation will have on Wood Village as a city. ORS 199.462(1) states that the Boundary Commission is to consider economic, demographic and sociological trends and projections pertinent to the proposal. It is also to consider the past and prospective physical development of land that would be affected directly or indirectly by the annexation. Certainly, the term "pertinent to the proposal" is as broad as the phrase "land directly or indirectly affected by the proposed annexation" and would include a consideration of the effect this annexation would have on surrounding cities, where evidence is offered on the subject. Moreover, we note that one purpose of the Boundary Commission is to guide the extension of boundaries in a manner that insures the financial integrity of local government units. ORS 199.410(2).

---

of its own building inspection. Wood Village contracts for much of its planning and building inspection services with several different entities making it potentially more time consuming for developers and others utilizing the process.

"13.  The proposal creates an island and indications are that residents of the island do not desire annexation. All residents in the island were notified of the August 30 hearing.

"14.  A brief financial comparison utilizing tax rates and user charges indicates that Gresham could provide a full range of services to existing and potential property for less than could Wood Village.

"15.  Owners of several adjacent properties appeared at the hearing and requested inclusion of their property in Proposal No. 1467. The specific properties requested were TL 128 owned by Donald L. and Bonnie B. Camp and containing 1.47 acres; and TLs 9 and 131 owned by B. T. Jordan, Chris Jordan and Sidney Bartels and containing 7.03 acres. All parcels are located in Section 34, T1N R3E of the Willamette Meridian in Multnomah County, Ore.

"REASONS FOR DECISION

"On the basis of the findings the Commission determined that:

"1.  The property owner desires annexation to the City of Gresham.

The question is whether there was evidence offered on the subject of the financial integrity of Wood Village which would require the Boundary Commission to address the matter in its final order. There was. Wood Village included the McGill property in its Comprehensive Plan. The mayor of Wood Village testified that this annexation would devastate the financial integrity of Wood Village and its chance to become an economically viable community in the future. Wood Village's planning consultant testified that if Wood Village cannot expand to the south, in the direction of the McGill property, then it cannot expand at all and, if it cannot grow in population, then it can never reach a full level of urban services and fully maintain itself as a city. The three cities of Troutdale, Fairview and Wood Village submitted a letter to the Boundary Commission outlining the growth pattern of their cities and Gresham. They indicated that the economic viability of the smaller cities is at stake and that, if they cannot expand, they will not be able to develop a full range of city services.

------

"2.    The territory to be annexed has been identified as appropriate for urban use by being within the MSD Interim Immediate Growth Area; designated urban on the Multnomah County Framework Plan and Future Urban on the county's Rockwood Community Plan. The boundary change is in accord with the applicable LCDC Goals and the Rockwood Community Plan.

"3.    Sewer, water, police, fire and other municipal services can best be provided for the ultimate development of the property by the City of Gresham. It is logical that this entire area ultimately be part of the City of Gresham, and any problems caused by withdrawing the territory from the fire district (RFPD #10) in the interim can be mitigated by cooperative arrangements between Gresham and the fire district.

"ORDER

"On the basis of the findings and reasons listed above, the Boundary Commission approved Boundary Change Proposal No. 1467 as modified on September 17, 1979.

"NOW THEREFORE IT IS ORDERED THAT the territory described in Appendix "A" and depicted on the attached map, be annexed to the City of Gresham as of this date."

The Boundary Commission may not believe that the ability of Wood Village to survive as a viable city unit will be affected by this annexation or that, if affected, this would be a reason to deny annexation. However, sufficient evidence was presented to raise the issue, and as it is a relevant criterion, the Boundary Commission must at least address the matter in its findings. *Hillcrest Vineyard v. Bd. of Comm. Douglas Co.,* 45 Or App 285, 293, 608 P2d 201 (1980). Failure to do so was error.

■ A more glaring deficiency in the Boundary Commission's order is the lack of consideration given to the effect this annexation will have on the people and land in the "island" area. It is undisputed that this proposed annexation creates an island area which appears from the maps in evidence to be completely surrounded by the City of Gresham. The area contains seventy-five residential homes. There was testimony from various sources, including the Multnomah County Planning Department, regarding the problems that would arise because of the creation of this "island" area. Concern centered on the inefficiency of providing services to this area, the jurisdictional problems, and the fact that the people in this area would, in effect, be subject to annexation against their wishes. Some of the residents in this area testified and others submitted letters stating their opposition to the annexation and their concern that the cost of services to them would increase and that ultimately they would be paying for services from the City of Gresham that they did not want.

The Boundary Commission found that this proposal creates an island and that the residents of the island do not desire annexation.[3] There is no indication that they considered the interests of these people or the problems that would arise because of creation of this "island" area. This lack of consideration seriously

---

[3] See finding #13, note 2, *supra.*

undermines the conclusion that this boundary extension is a logical one. We are not saying that the proposed annexation is illogical because an "island" is created. This is a matter for the Boundary Commission's judgment. We are saying that the question must be recognized and dealt with as such in the final order. The Boundary Commission did not do so.

■ We turn now to the question of the fire district. Evidence was introduced by the chairman of the fire district; he claimed that the district and the people it served would be adversely affected by the withdrawal of the McGill property from its coverage: the cost of service would increase and service to the area would decrease in efficiency. Others supported his testimony. The Boundary Commission's findings and reasons recognize the fire district's interests and the fact that it might experience problems as a result of this annexation.[4] They do not, however, deal with the effect this annexation will have on the fire district and thus on the people and land area it serves. This is a relevant consideration under ORS 199.462(1), and must be addressed.

■■ Petitioner next attacks the Boundary Commission's order as being speculative, inasmuch as the applicant does not desire city services at the present time. It suggest that annexation is thus not necessary. Our review of the Boundary Commission's action is to determine if the correct procedures and law were followed and whether its order is supported by substantial evidence. ORS 183.482(7)(8). It is not our function to judge whether the annexation is appropriate or necessary; that is a matter for the Commission. We cannot say that, because services are not now desired, the annexation is inappropriate. The Boundary Commission considered the matter[5] and found otherwise.

---

[4] See finding #8 and Reason #3, note 2, *supra.*

[5] See finding #2, note 2, *supra.*

■     Petitioner further claims that the order of annexation furthers the improper goals of some of the commissioners and reflects consideration of "political" motives. It specifically points to the statements of two of the commissioners made prior to casting their votes. One statement relates to where the boundary of Gresham should be; the other expresses the opinion that small cities should be required to consider consolidation. Without deciding whether these are proper considerations, we find no indication in the record or in the Boundary Commission's order that these were factors in its decision.

■     Petitioner also notes that there is no finding concerning the fact that the applicant was experiencing problems with Multnomah County over development of his property. Petitioner does not tell us the significance of this fact, assuming it is a fact; the suggestion is that this was the real reason McGill desired annexation to the City of Gresham. We fail to see how this is a relevant consideration under ORS 199.462(1).

■     Lastly, petitioner argues that the Boundary Commission's failure to adopt its own findings of fact demonstrates that its order is unsupported by the evidence and by appropriate findings and reasons. It is true that the Boundary Commission adopted the findings prepared by its staff. In *Marbet v. Portland Gen. Elect.,* 277 Or 447, 470, 561 P2d 154 (1977), the Supreme Court stated that:

> "It is doubly important that such non-professional agency heads not think of their staff as the agency and themselves as a reviewing body, but rather understand clearly that it is their personal responsibility to determine the facts and to set and apply the standards entrusted to them by the act."

*Marbet,* contrary to petitioner's suggestion, does not prohibit an agency from adopting the findings of its staff. All *Marbet* requires is that an agency decide the facts for itself. The adoption of its staff's proposal does

not establish that the agency failed to perform its proper function here. The findings, other than those which we have indicated are incomplete, are supported by substantial evidence in the record. We decline to assume that the Commission did not independently make them.

■ Petitioner's next two assignments of error raise procedural matters. These issues require discussion because they will be pertinent on remand. Initially, petitioner claims that the Boundary Commission failed to make and maintain a clear and complete record of the proceeding. The record, according to petitioner, is incomplete, confused and prejudical. The petitioner cites four deficiencies in support of its claim.

First, petitioner draws our attention to the fact that the Boundary Commission combined the public hearing on this proposed annexation with the hearing on a proposed annexation to the City of Fairview. Petitioner claims that this caused time allocation problems. However, petitioner does not claim that it was denied a chance to speak or that anyone present did not receive a full opportunity to do so. The Boundary Commission did set time limits, in accordance with its rules of procedure, on the length of time devoted to each side of the proposal. However, nothing in the record suggests that these limits were inherently unfair or that anyone was denied a chance to speak. There was considerable testimony from both sides on the merits and drawbacks of the annexation. Moreover, it appears that the proposed annexations were related and involved many of the same parties.

We know of no rule that would prohibit such a combination. This court has the power to remand an agency order if the "fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure." ORS 183.482(7). Petitioner

fails to demonstrate how the proceedings, because of the combination of the two proposals, were unfair to any of the participants or affected the correctness of the Boundary Commission's action in any way.

Secondly, petitioner notes that the record is incomplete because throughout the transcript there are blanks indicating periods where the tape was inaudible. Once again, petitioner fails to show how the incomplete transcript, by itself, which was made after the hearing, was a material error which affected the fairness of the proceeding. We note that our reading of the transcript was not affected by the blanks in the testimony.

Petitioner does point out, however, that the partially inaudible tape was relied on by some of the commissioners in casting their votes. The hearing on this annexation was held on August 30, 1979. At that time, all the commissioners were not present and a voting quorum to carry or reject the proposed annexation could not be obtained. The Boundary Commission met again on September 17, 1979, to vote on the proposed annexation. Two of the commissioners, who where not present at the August 30th hearing, voted at that time. They indicated that they listened to the tapes, examined all the relevant evidence and felt qualified to vote on the matter. Petitioner does not contend or point to any evidence that their votes and thus, the Boundary Commission's decision, was affected by the fact that portions of the tape were inaudible.

Finally, in support of its claim that the record is incomplete, confusing and prejudical, petitioner maintains that the Boundary Commission's findings are legally inadequate and demonstrate a slant or prejudice against Wood Village inasmuch as they fail to deal with the effect annexation will have on Wood Village's economic viability and financial integrity. This contention has already been discussed.

Petitioner's claim that the Boundary Commission failed to make and maintain a clear and complete

record must fail. Although there is a problem with the completeness of the record, petitioner has failed to demonstrate how this affected the fairness or correctness of the proceedings and order.

Petitioner's last assignment of error questions the Boundary Commission's failure to follow contested case procedures. Petitioner argues that our decision in *Fosses v. Portland Area LGBC*, 43 Or App 647, 603 P2d 1235 (1979), wherein we held that Boundary Commissions are state agencies which are obligated to follow contested case procedures, should be applied retroactively. Respondent-intervenor argues that *Fosses* does not apply to this case and additionally notes that a remand on this matter would be futile because the legislature has since specifically exempted Boundary Commissions from the contested case procedures of ch 183. *See* ORS 183.315(1), Or Laws 1979, ch 593 § 7. We are not required to decide this issue because there is no evidence in the record that the petitioner requested a contested case hearing. *Sunnyside Neighborhood v. Clackamas Co. Comm.*, 280 Or 3, 10, 569 P2d 1063 (1977); *Fosses v. Portland Area LGBC, supra,* at 650.

Reversed and remanded for further consideration of those factors specified in ORS 199.462(1), as they affect the land surrounding the area to be annexed, specifically the "island" area, the City of Wood Village and the fire district.