# REDLAND WATER DISTRICT,
*Petitioner,*

*v.*

# PORTLAND METROPOLITAN AREA LOCAL GOVERNMENT BOUNDARY COMMISSION,
*Respondent,*

# CLAIRMONT WATER DISTRICT et al,
*Intervenors-Respondents.*

(1789; CA A24265)

665 P2d 1241

William L. Brunner, Portland, argued the cause and filed the brief for petitioner.

Frank W. Ostrander, Jr., Assistant Attorney General, Portland, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Deanne L. Darling, Oregon City, argued the cause for intervenors-respondents. With her on the brief was John H. Hammond, Jr., and Biggs, Hutchison, Hammond & Walsh, P.C., Oregon City.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This case involves the merger of three water districts by an order of the Portland Metropolitan Area Local Government Boundary Commission. The Redland Water District wants no part of the merger and seeks review of that order. ORS 199.461(3). We affirm.

The water districts involved are contiguous and are located in Clackamas County. Each was established under ORS chapter 264, and each has functioned since its formation as an independent district governed by an elected board. In 1979, the districts discussed the possibility of merger. Clairmont and Holcomb-Outlook favored the change; Redland did not. Clairmont and Holcomb-Outlook thereafter continued to discuss merger and conducted a poll and a water system study of the three districts to determine the feasibility of such a plan. In April, 1981, they requested by resolution that the commission initiate proceedings for the merger of the Redland and Holcomb-Outlook Districts into the Clairmont District. Redland notified the commission of its continued opposition to a merger. On November 9, 1981, the commission's staff submitted its report recommending approval of the request. On November 23, 1981, the commission adopted Resolution No. 54, initiating on its own behalf Proposal No. 1789 to merge the three districts. On February 11, 1982, following public hearings on the proposal in which Redland participated, the commission voted to approve the merger. On April 5, 1982, an order was entered to that effect.

Boundary commission procedures are governed by ORS chapter 199. The merger of water districts organized under ORS chapter 264 is a "major boundary change" over which a commission has jurisdiction. *See* ORS 199.415(12), 199.420(1), 199.460(1). Such a proceeding may be initiated by petition, *see* ORS 199.461 and 199.476, or, as was done in this case, by a boundary commission's adoption of a resolution proposing the change. *See* ORS 199.485. After a proceeding has been initiated, a commission is required to (1) conduct a study of the proposed change; (2) hold one or more public hearings on the proposal; and (3) on the basis of the study and the facts presented at the hearing, approve or disapprove the proposed

change by an order stating the reasons for the decision. ORS 199.461.

ORS 183.315(1) exempts the commission from certain contested case (and other) requirements of ORS chapter 183:

"The provisions of ORS 183.410, 183.415, 183.425, 183.440, 183.450, 183.460, 183.470 and 183.480 do not apply to local government boundary commissions created pursuant to ORS 199.425 or 199.430 * * *."

However, under ORS 199.461(3), jurisdiction for review of a commission order is conferred on this court, and the appeal is to proceed "in accordance with the provisions of ORS 183.482." Therefore, we review the commission's action in this case to determine if the correct procedures and law were followed and whether its order is supported by substantial evidence. ORS 183.482(7) and (8); *see generally City of Wood Village v. Portland Metro Area LGBC,* 48 Or App 79, 616 P2d 528 (1980); *City of Wood Village v. Portland Met. LGBC,* 45 Or App 585, 609 P2d 379 (1980).

(1) *Pre-merger Election.*

Redland contends that, in ordering the merger without consent of its governing body or a vote of the district's electorate, the commission "failed to meet statutory and constitutional requirements."[1]

■ The relevant statutes do not require that an election of any sort occur before the commission's final order can be entered or take effect. When a boundary commission enters a final order in a proceeding for a major boundary change, "[a]n election on the proposed change, *if required under the principal Act,* shall be held." ORS 199.480(1)(b). (Emphasis supplied.) "Principal act" refers to the statutes which describe the powers of a district, including but not limited to the statutes under which the district is proposed or is operating. *See* ORS 199.415(16); *see also* ORS 198.705(15). ORS chapter 264 provides for the incorporation of domestic water supply districts

---

[1] The constitutional argument is without merit.

and describes their powers, operation and administration but does *not* address the question whether an election is required when districts merge or otherwise desire to change their boundaries.[2]

Redland contends, however, that, although the districts were created under ORS chapter 264, ORS 198.885(1) is the principal act:

> "One district or more *may* merge with another *if the merger is approved by the voters* as provided by ORS 198.895 to 198.915. The districts included in the merger shall be considered annexed by and absorbed into the surviving district." (Emphasis supplied.)

On this basis, Redland concludes that an election is required under ORS 199.480(1)(b). We disagree. Although, arguably, ORS 198.885 may describe a "power" of these districts (*i.e.*, to merge), the provisions of ORS 198.705 to 198.955 (the District Boundary Procedure Act), apply to boundary change proceedings in cases where boundary commission procedures for such purposes are *not* used. ORS 198.715(2) provides:

> "*Except* as otherwise provided by ORS 199.410 to 199.519 [proceedings before a boundary commission for the formation or change of organization of special districts], *all* district formation and change of organization proceedings shall be initiated, conducted and completed as provided by ORS 198.705 to 198.955." (Emphasis supplied.)

Because neither ORS chapter 264 nor ORS 198.885(1) requires an election in the case of this proposed merger, Redland's statutory argument fails and, therefore, the provisions of ORS 199.480(1)(b) do not apply. When a boundary commission enters a final order in a proceeding to merge districts, and no election is necessary under ORS 199.480(1)(b), the order *"shall* conclude the proceeding for *all* purposes[,] and the merger * * * *shall* take effect 45 days after the date the commission adopts the final order." ORS 199.480(1)(c). (Emphasis supplied.)

    (2)   *Adequacy of the Commission's Findings.*

---

[2] We do not read ORS 264.460, which refers to the exercise of initiative and referendum powers under the Oregon Constitution, as requiring an election in such a proceeding.

Three assignments of error involve findings of the commission, and we consider them together. We first address the contention that in reaching its decision the commission effectively failed to consider the following factors: (1) the effect on the new district of future annexation by Oregon City of areas within the Clairmont district; (2) the status of Redland's "reserve fund" of $240,000 following merger; and (3) the quality and cost of water service that would be provided following merger.

The threshold question is whether these factors are relevant statutory criteria that the commission was required to take into account. *See City of Wood Village v. Portland Metro. Area LGBC, supra,* 48 Or App at 82. ORS 199.410(2) sets forth the purposes of local boundary commissions:

"The purposes of ORS 199.410 to 199.519 are to:

"(a) Provide a method for guiding the creation and growth of cities and special service districts in Oregon in order to prevent illogical extensions of local government boundaries;

"(b) Assure adequate quality and quantity of public services and the financial integrity of each unit of local government;

"(c) Provide an impartial forum for the resolution of local government jurisdiction questions; and

"(d) Provide that boundary determinations are consistent with local comprehensive planning, in conformance with statewide planning goals."

Toward that end, a boundary commission reviewing a petition for a boundary change is to

"* * * consider economic, demographic and sociological trends and projections pertinent to the proposal, past and prospective physical development of land that would directly or indirectly be affected by the proposed boundary changes and the goals adopted under ORS 197.225." ORS 199.462(1).

■ Although Redland points out that, during hearings before the commission, the question of possible annexation was raised and counsel for Clairmont stated that "Clairmont is working with * * * Oregon City trying to coordinate the installation of water facilities," there is nothing in the record to indicate whether the annexation process had begun, when, if ever, it would take place or what portion of Clairmont would

be affected by such a plan. Given that state of the record and in the absence of any claim that the commission failed to make a proper record, the commission did not err in failing to consider the matter in its findings. *Cf. City of Wood Village v. Portland Metro. Area LGBC, supra,* 48 Or App at 86-87 (finding that there *was* sufficient evidence to require consideration of an issue relevant under ORS 199.410(2) and 199.462(1)).

■ Paragraph 8 of the commission's findings states, in part:

"Reserve funds from each of the districts would be available for the benefit of the merged district as a whole."

Assuming that the commission was required by statute to consider the question of the disposition of the fund in its final order, it did so. Furthermore, we note that Redland does not contend that the merger of the assets and liabilities of individual districts is not an ordinary consequence of the merger of the districts, that the acquisition of those assets and liabilities by the new district is somehow unlawful or that such reserve funds are not part of the assets the individual districts bring into the merger.[3]

■ A stated purpose of local boundary commissions is to "[a]ssure adequate quality and quantity of public services." ORS 199.410(2)(b). In addition, a boundary commission is to consider "economic * * * projections pertinent to the proposal." ORS 199.462(1). Thus, the quality and cost of water service to be provided following merger are relevant factors. They are appropriately considered by the commission in its final order in findings addressed to (1) the three districts' existing water delivery systems, needed improvements and associated costs; (2) costs of capital improvements and service to each district following merger; and (3) the centralized governing, administrative and maintenance systems that would result from the proposed boundary change.

Redland argues that the commission's order is not supported by adequate findings and that the commission's order and reasons are not supported by substantial evidence. Redland also argues that the findings are conclusory and

---

[3] The merging of assets *is* a consequence of the merger of districts under ORS chapter 198. *See* ORS 198.885.

therefore inadequate and that they do not support the commission's decision.

■　It would serve no purpose to detail the points Redland relies on to support its assertion of lack of substantial evidence. Substantial evidence is any evidence a reasonable mind could accept as adequate to support a conclusion. *See Braidwood v. City of Portland,* 24 Or App 477, 480, 546 P2d 777, *rev den* (1976). Here, the evidence in the record on which the commission relied meets that standard.

■　We also conclude that, given the requirements of ORS 199.410 and 199.462, set out above, the "Findings" and "Reasons" included in the commission's order are adequate to support its decision to allow the merger. Contrary to Redland's argument, each finding need not lead inexorably to the conclusion that merger should be allowed, *e.g.,* the finding that few benefits would result from connecting the water pipes of the three districts, albeit a relevant consideration, does not vitiate the commission's decision. The commission has addressed the relevant statutory factors and stated the reasons for its decision to allow the merger. It is not our function to judge whether the merger is necessary or beneficial in all respects.

■　The commission's order is not inadequate for the purposes of judicial review. As the court explained in *Sunnyside Neighborhood v. Clackamas Co. Comm.,* 280 Or 3, 21, 569 P2d 1063 (1977):

> "* * * No particular form is required, and no magic words need be employed. What is needed for adequate judicial review is a clear statement of what, specifically, the decisionmaking body believes, after hearing and considering all the evidence, to be the relevant and important facts upon which its decision is based. Conclusions are not sufficient."

The findings in this case provide a sufficiently clear expression of the basis for the commission's decision to allow us to review that decision to determine whether applicable provisions of ORS chapter 199 were followed and properly applied.

(3) *Delegation.*

■■　Finally, Redland contends that the commission's order "was premised upon an invalid delegation of legislative power" in that the legislature purportedly failed to provide

proper standards for the exercise of the commission's functions under ORS chapter 199 and that, therefore, procedural safeguards are lacking. The standards provided are not inadequate. *See Warren v. Marion County,* 222 Or 307, 353 P2d 257 (1960). We also reject Redland's corollary argument that the commission itself was required to promulgate standards for reviewing the proposed merger. *See Fosses v. Portland Area LGBC,* 43 Or App 647, 653, 603 P2d 1235 (1979).

Affirmed.