Argued and submitted April 21, 1993, affirmed on each petition February 16, 1994

# MULTNOMAH COUNTY RURAL FIRE PROTECTION DISTRICT NO. 10,
*Petitioner,*

*v.*

# PORTLAND METROPOLITAN AREA LOCAL GOVERNMENT BOUNDARY COMMISSION,
and City of Troutdale, City of Wood Village and City of Fairview,
*Respondents.*

(3018, 3019, 3020; CA A73720 (Control),
A73721, A73722, A75873, A75874, A75875)
(Cases Consolidated)

868 P2d 783

Leslie M. Roberts argued the cause for petitioner. With her on the briefs was Josselson, Potter & Roberts.

John T. Bagg, Assistant Attorney General, argued the cause for respondent Portland Metropolitan Area Local Government Boundary Commission. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Matthew R. Baines, Assistant City Attorney, argued the cause for respondents City of Troutdale, City of Wood Village and City of Fairview. With him on the brief was Thomas Sponsler, City Attorney.

Before Deits, Presiding Judge, and Riggs, Judge, and Durham, Judge pro tempore.

DEITS, P. J.

## DEITS, P. J.

Multnomah County Rural Fire Protection District No. 10 (district) seeks review of the Portland Metropolitan Area Local Boundary Commission's (commission) orders approving the withdrawal from the district of the cities of Fairview, Troutdale and Wood Village. We affirm.

The district makes numerous arguments, but three recurring themes run through most of them: that the commission did not make adequate findings to support its decision, that its findings are not supported by substantial evidence and that the stated reasons for its decisions are inconsistent with certain statutory policies articulated in ORS 199.410.[1] After reviewing the entire record, we conclude

---

[1] ORS 199.410 provides:

"(1) The Legislative Assembly finds that:

"(a) A fragmented approach has developed to public services provided by local government. Fragmentation results in duplications in services, unequal tax bases and resistance to cooperation and is a barrier to planning implementation. Such an approach has limited the orderly development and growth of Oregon's urban areas to the detriment of the citizens of this state.

"(b) The programs and growth of each unit of local government affect not only that particular unit but also the activities and programs of a variety of other units within each urban area.

"(c) As local programs become increasingly intergovernmental, the state has a responsibility to insure orderly determination and adjustment of local government boundaries to best meet the needs of the people.

"(d) Local comprehensive plans define local land uses but may not specify which units of local government are to provide public services when those services are required.

"(e) Urban population densities and intensive development require a broad spectrum and high level of community services and controls. When areas become urbanized and require the full range of community services, priorities are required regarding the type and levels of services that the residents need and desire. Community service priorities need to be established by weighing the total service needs against the total financial resources available for securing services. Those service priorities are required to reflect local circumstances, conditions and limited financial resources. A single governmental agency, rather than several governmental agencies is in most cases better able to assess the financial resources and therefore is the best mechanism for establishing community service priorities.

"(2) It is the intent of the Legislative Assembly that each boundary commission establish policies and exercise its powers under this chapter in order to create a governmental structure that promotes efficiency and economy in providing the widest range of necessary services in a manner that encourages and provides planned, well-ordered and efficient development patterns.

"(3) The purposes of ORS 199.410 to 199.534 are to:

that the commission's findings were adequate and are supported by substantial evidence.

■ We also reject the district's arguments concerning the consistency of the commission's decision with the policies expressed in ORS 199.410. That argument assumes that particular policies and purposes in ORS 199.410, principally subsection (3), amount to mandatory approval criteria. In *Redland Water Dist. v. Portland Metro. Area LGBC*, 63 Or App 641, 648, 665 P2d 1241, *rev den* 295 Or 541 (1983), we rejected an argument based on a similar premise:

> "We also conclude that, given the requirements of ORS 199.410 and 199.462, set out above, the 'Findings' and 'Reasons' included in the commission's order are adequate to support its decision to allow the merger. Contrary to Redland's argument, each finding need not lead inexorably to the conclusion that merger should be allowed, *e.g.*, the finding that few benefits would result from connecting the water pipes of the three districts, albeit a relevant consideration, does not vitiate the commission's decision. The commission has addressed the relevant statutory factors and stated the

> "(a) Provide a method for guiding the creation and growth of cities and special service districts in Oregon in order to prevent illogical extensions of local government boundaries and to encourage the reorganization of overlapping governmental agencies;

> "(b) Assure adequate quality and quantity of public services and the financial integrity of each unit of local government;

> "(c) Provide an impartial forum for the resolution of local government jurisdictional questions;

> "(d) Provide that boundary determinations are consistent with acknowledged local comprehensive plans and are, in conformance with statewide planning goals. In making boundary determinations the commission shall first consider the acknowledged comprehensive plan for consistency of its action. Only when the acknowledged local comprehensive plan provides inadequate policy direction shall the commission consider the statewide planning goals. The commission shall consider the timing, phasing and availability of services in making a boundary determination; and

> "(e) Reduce the fragmented approach to service delivery by encouraging single agency service delivery over service delivery by several agencies."

ORS 199.462(1) provides:

> "In order to carry out the purposes described by ORS 199.410 when reviewing a petition for a boundary change or application under ORS 199.464, a boundary commission shall consider local comprehensive planning for the area, economic, demographic and sociological trends and projections pertinent to the proposal, past and prospective physical development of land that would directly or indirectly be affected by the proposed boundary change or application under ORS 199.464 and the goals adopted under ORS 197.225."

reasons for its decision to allow the merger. It is not our function to judge whether the merger is necessary or beneficial in all respects."

We reiterated that point in *McGowan v. Lane County Local Govt. Bdry. Comm.*, 102 Or App 381, 384, 795 P2d 560, *rev den* 310 Or 612 (1990), stating that ORS 199.462(1) and, by implication, ORS 199.410, "[enumerate] general factors that must be given some consideration before a decision is made; it does not articulate specific criteria that a boundary commission is 'bound to apply' as substantive tests in reaching a decision." The thrust of our reasoning on that issue in both cases was that the statutes provide general considerations that boundary commissions must consider; however, their numerous and varied statements of policies and purposes do not constitute approval criteria that *dictate* particular decisions. In fact, it would be impossible for them to play that role, given the competing objectives that they include and the fact-specificity involved in their application.

■    The district also argues that the statutes, as interpreted above, constitute an impermissible legislative delegation which leaves the commission without adequate decisional standards and the parties without adequate protection "against arbitrary and *ad hoc* action." However, *Mid-County Future v. Port. Metro. Area LGBC*, 106 Or App 700, 809 P2d 1353 (1991), and *Redland Water Dist. v. Portland Metro. Area LGBC, supra*, 63 Or App at 648-49, established that the standards governing the commission's review were adequate. We again so hold.

■    The district further argues that the commission erred in construing ORS 199.410(1)(e) as embodying a preference for "urban service provision by general purpose units of government," such as cities, and by finding that statute to be consistent with its recognition that the withdrawals would result in the "gradual elimination" of the district. The district maintains that the commission's understanding is contrary to the policy in ORS 199.410(1)(e) itself and in ORS 199.410(3)(e), opposing fragmented service delivery sources and expressing a general preference for service expenses and deliveries by a "single governmental agency" rather than several. The district concludes that the orders here are contrary to those statutes and will result in fragmenting the

service that now emanates from one provider "into four parts — three towns and [the district]."

To the extent that that argument is not answered by the preceding discussion, it fails for the further reason that it rests on legal or factual assumptions that the commission did not and we do not share: first, that the "services" to which the statutes refer are necessarily *specific* operations, like fire protection, rather than the total gamut of governmental services in an area; second, and relatedly, that the "single governmental entity" to which the statutes refer must necessarily be an existing provider of a specialized service, rather than a potential alternative entity that can provide that service in addition to others; and third, that the effect of the withdrawals will necessarily result in four providers rather than one.

ORS 199.410(2) provides:

> "It is the intent of the Legislative Assembly that each boundary commission establish policies and exercise its powers under this chapter in order to create a governmental structure that promotes efficiency and economy in providing the widest range of necessary services in a manner that encourages and provides planned, well-ordered and efficient development patterns."

Pursuant to that directive and authorization, the commission has adopted rules that reflect a general preference for cities as "primary providers of urban services." OAR 193-05-000(1)(a); *see also* OAR 193-05-005(1)(c), (f) and (g). The district does not challenge those rules directly, nor does its arguments demonstrate that the general policy of the rules or the specific orders in these cases are contrary to the statutes. The commission's preference for centralized providers and providers of multiple urban services is consistent with the statutory scheme.

Consequently, the district's first and second assumptions do not withstand scrutiny. The third is simply incorrect as a matter of fact. The reason that the cities initiated the withdrawal proceedings was that they intended to obtain fire services from the City of Gresham at a lower cost than offered by the district. A multiplicity of providers is not an inevitable consequence of the withdrawals, and it is directly contrary to

their objective. For those reasons, we do not find the district's argument persuasive.

We have considered the district's other contentions, and conclude that they do not merit discussion.

Affirmed on each petition.