Argued August 22, affirmed September 30, reconsideration denied
November 13, petition for review denied December 27, 1974

## MARION COUNTY FIRE DISTRICT #1, *Appellant,*
## *v.* MARION-POLK COUNTY BOUNDARY
## COMMISSION, *Respondent.*
### 526 P2d 1031

*Bruce W. Williams*, P.C., Salem, argued the cause and filed the brief for appellant.

*Al J. Laue*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

This is an appeal via the circuit court by a fire protection district from an order of the Marion-Polk County Local Government Boundary Commission providing for annexation (a minor boundary change, ORS 199.415(13)) to the city of Salem of an area in Marion County of approximately 65 acres. The same area was already in the Fire District, which protests that the irregular boundaries of the area make rendering of emergency services to the neighborhood difficult, and that the concept, by reason of the irregular shape, is illogical and arbitrary. The Boundary Commission was created by ORS 199.425 (2) as a state agency; its seven members are appointed by the Governor. Authority and procedure for the Commission are provided in ORS 199.410 through 199.514. Appeal from the Commission's orders within 30 days of final order is provided for in ORS 199.461 and ORS 34.010 to 34.100 (the writ of review procedure).

The circuit court's judgment upheld the Commission's action and dismissed the writ.

The Fire District's contentions primarily are that the Commission acts in a quasi-judicial role and should be limited to the restrictions placed upon local governmental bodies in zone-change matters by *Fasano v. Washington Co. Comm.*, 264 Or 574, 507 P2d 23 (1973), and that under the facts of this case the Commission's action was arbitrary and not based upon authority or evidence.

■ With reference to the *Fasano* argument, it is contended that the quasi-judicial requirements made there-

in should be adhered to in this type of proceeding. There, the court said:

> "* * * With future cases in mind, it is appropriate to add some brief remarks on questions of procedure. Parties at the hearing before the county governing body are entitled to an opportunity to be heard, to an opportunity to present and rebut evidence, to a tribunal which is impartial in the matter—i.e., having had no pre-hearing or ex parte contacts concerning the question at issue—and to a record made and adequate findings executed * * *." 264 Or at 588.

An examination of the statutory procedures which were assiduously adhered to as shown by the record in the case at bar, and the record itself, discloses that the Commission may, and did, commence the proceeding (ORS 199.490 (1)(d)); detailed notice is required and was given to all interested parties (ORS 199.461, 199.-463); hearings are required and were provided where interested parties were heard (ORS 199.461, 199.463). The order made after the hearings stated the reasons for the decision of the Commission as provided for in ORS 199.461(3). The detailed record in the proceeding, including a transcript of two public hearings, contains no hint that any Commissioner had prehearing or ex parte contacts concerning the question. Thus, the due process kinds of requirements included in *Fasano* for zone-change matters were statutorily provided for in these proceedings, and followed. The transcript indicates the Commissioners were familiar with the area, its fire, water and sewer districts, its prospects as an urban growth area, etc. This should be expected, given the kind of public service the Commissioners render.

We conclude that the statutory scheme of author-

ity and procedure for such Commissions, plus the adherence to the prescribed procedure shown by the record here, means that the part of *Fasano* we have quoted is not applicable.

There remains the question of the test we put to the substance of the Commission's decision. The court in *Fasano* stated:

> "Ordinances laying down general policies without regard to a specific piece of property are usually an exercise of legislative authority, are subject to limited review, and may only be attacked upon constitutional grounds for an arbitrary abuse of authority. On the other hand, a determination whether the permissible use of a specific piece of property should be changed is usually an exercise of judicial authority and its propriety is subject to an altogether different test * * *." 264 Or at 580-81.

The circuit judge in the case at bar concluded that the test we used in *Millersburg Dev. Corp. v. Mullen,* 14 Or App 614, 514 P2d 367, Sup Ct *review denied* (1973), is applicable. There, in a case involving the setting of boundaries for an area in which some inhabitants had petitioned for an election to create a city, we said:

> "* * * [W]e conclude the action * * * was legislative in character. Certainly, the determination of the boundaries of a city—a political subdivision of the state—transcends the individual interests of each parcel of property proposed to be located therein. It becomes a matter of general interest in the whole area—a matter of general policy." 14 Or App at 623.

*See also Schmidt et al v. City of Cornelius,* 211 Or 505, 515, 517, 316 P2d 511 (1957). The legislature in setting

up the Boundary Commission also set policy and guidelines:

"(1) The Legislative Assembly finds that:

"(a) A fragmented approach has developed to public services provided by local government and such an approach has limited the orderly development and growth of Oregon's urban areas for the maximum interest of all its citizens.

"(b) The programs and growth of each unit of local government affect not only that particular unit but also the activities and programs of a variety of other units within each urban area.

"(c) As local programs become increasingly intergovernmental, the state has a responsibility to insure orderly determination and adjustment of local government boundaries to best meet the needs of the people.

"(2) The purpose of ORS 199.410 to 199.514 is to provide a method for guiding the creation and growth of cities and special service districts in Oregon in order to prevent illogical extensions of local government boundaries and to assure adequate quality and quantity of public services and the financial integrity of each unit of local government." ORS 199.410.

"In order to carry out the purposes described by ORS 199.410 when reviewing a petition for a boundary change, a boundary commission shall consider economic, demographic and sociological trends and projections pertinent to the proposal, and past and prospective physical development of land that would directly or indirectly be affected by the proposed boundary change." ORS 199.462(1).

Following this language are set forth specific boundary changes that may not be made, none of which are applicable at bar. The authority of the Boundary Commission obviously stands upon different ground than that of a city which seeks to annex property on its

borders. A major distinguishing feature is that the Boundary Commission determines not only city boundaries, but also those of all kinds of special service districts outside of cities. In its determinations, it is directed by the legislature to consider desirable development of the boundaries of all of them, individually and collectively, according to the policy and guidelines detailed in ORS 199.410 and 199.462(1). Thus, while precedents involving annexations instituted by cities under different statutes or charter provisions are of interest and instructive in coming to our conclusions, they are not controlling.

■ We conclude that, if the Boundary Commission exercises its authority within the guidelines and policy of the applicable statutes, our scrutiny of its decision is to determine only whether its action was arbitrary under the circumstances.

The irregular shape of the area annexed to the city on its face causes inquiry as to whether the policy and guidelines of the statute were followed. This is illustrated by the rough sketch of the area on following page.

There are but five property owners in the area, much of which is vacant land. However, the Serra Catholic High School buildings and grounds, now occupied by the State Board of Education offices, are included and there are several dwellings and a small church. One vacant area within it has been acquired by the Salem School District for a junior high school site. From the map in evidence it appears that several twelve- and six-inch water mains of the city of Salem come close to the property and stop, and one apparently penetrates it a short distance. Much of the adjacent area is urban in type and population. A large shopping

center is located across Lancaster Drive to the west of it. Much was said during the hearings of a pending proposal to build some 328 dwellings on approximately 94 acres to the east of the subject area. It seems probable that some property upon which dwellings exist along 45th Avenue was purposely omitted because the residents therein oppose annexation.

The irregularity of the boundary raises a question, as noted above. In *Portland Gen. Elec. Co. v. City of Estacada*, 194 Or 145, 241 P2d 1129 (1952), the Oregon Supreme Court held that legislation providing authority for cities to annex territory must be reason-

City of Salem Water

Footages are approximations based on map scalings.

ably applied. There a city sought to annex a dumbbell-shaped area about 300 feet wide at its narrowest part. On it was situated at its farthest part a power plant and dam, and it was otherwise virtually vacant except close to the city boundary. There was no direct access by road from the city boundary to the industrial property, and the connecting land was forest. The court held that the obvious purpose was to tax the industry, which had almost the same assessed valuation as the entire city. This was held to be an unreasonable exercise of the annexation authority of the city. Among tests the court (quoting from *Vestal v. Little Rock,* 54 Ark 321, 15 SW 891, 16 SW 291, 11 LRA 778 (1891)) said would be considered in annexation cases where the cities institute the proceedings are: (1) whether the property is held as city lots; (2) whether it is held for sale as city property; (3) whether it represents growth of the city beyond its boundary; (4) whether it is needed for a city purpose like streets and water or other utility extensions, or police regulation; and (5) whether its value is enhanced by prospective city use. The Oregon court, referring to these tests, said:

> "We do not hold that the above is exclusive as facts may alter the situation since each case must depend upon its own facts * * *." 194 Or at 165.

In other Oregon cases relatively slender fragments of land have been used without challenge in order to gain contiguity necessary for annexation. *See City of Tualatin v. City of Durham,* 249 Or 536, 439 P2d 624 (1968), and to a lesser degree, *Frankland v. City of Lake Oswego,* 8 Or App 224, 493 P2d 163 (1972), *affirmed as modified* 267 Or 452, 517 P2d 1042 (1973).

5. We think, in the context of this case, the irregularity in the shape of the area was a factor to be con-

sidered—indeed, two of the seven Commissioners voted against the proposal for this very reason. The reasons given in the resolution of the Commission proposing the annexation were:

"WHEREAS, it is the statutory function of the Marion-Polk County Local Government Boundary Commission to guide the growth of cities within its jurisdiction; and,

"WHEREAS, the Marion-Polk County Local Government Boundary Commission deems it expedient to seek the annexation to the City of Salem of the territory more particularly described in 'Exhibit A' attached hereto, and incorporated herein by this reference, by reason of the fact that said territory, due to existing and proposed property improvements, is assuming an urban character and that accordingly the territory needs full public urban services that the City of Salem is capable of providing; and,

"WHEREAS, it appears that such action would provide a desired public service to said territory * * *

"* * * * * *."

The motion upon which the Commission took action stated the reasons therefor:

"* * * [I]n as much as the objective of the Boundary Commission is to consolidate fragmentive — fragmentive use of government into a single provider of urban services and as our policy statement recognizes that is going to be a difficult and slow process, I think this annexation should be approved as a necessary means to achieve the long term goals of the Boundary Commission as well as the necessary means of achieving the statutory responsibility of the Boundary Commission to help prevent further fragmentations and prevent—promote orderly development and growth of our urban environment."

In the face of these stated reasons, as well as the policy and guidelines of the statute which the Commission in its judgment was seeking to follow, we conclude that its findings were not arbitrary. Although the tests set forth in Portland Gen. Elec. Co. v. City of Estacada, supra, which a city should consider are not controlling, their substance was observed in the resolution, the hearing, and the motion involved here. We hold that the decision by the Boundary Commission was made with adequate authority, was not arbitrary, and was based on evidence.

Affirmed.