Argued and submitted June 20, affirmed October 10, reconsideration denied
November 23, 1984, petition for review denied January 22, 1985 (298 Or 553)

# RIVERGATE RESIDENTS ASSOCIATION,
## *Petitioner,*

*v.*

# PORTLAND METROPOLITAN AREA LOCAL
# GOVERNMENT BOUNDARY COMMISSION et al,
## *Respondents.*

## (1930; CA A29383)

689 P2d 326

Phil M. Kelley and Janke, Kelley, Petersen & Sullivan, Portland, filed the brief for petitioner.

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Christine Chute, Assistant Attorney General, Salem, filed the brief for respondent.

Thomas R. Williams, Portland, argued the cause and filed the brief for City of Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Petitioner seeks review of a final order of the Portland Metropolitan Area Local Government Boundary Commission (Commission) approving the proposed annexation of certain unpopulated territory contiguous to its members' property. It contends that, because the approved proposal deliberately creates an "island" of its members' property, thereby subjecting it to summary annexation pursuant to ORS 222.750,[1] it is unreasonable and deprives the members of their constitutional right to vote on annexation. It also contends that the Commission failed adequately to consider the members' interests in approving the proposal. We affirm.

On May 20, 1983, the City of Portland submitted a proposal for the annexation of certain property pursuant to ORS 199.490(2), which authorizes the initiation of annexation proceedings by the adoption of a resolution by the affected city, with the consent of more than half of the owners of land and of real property representing more than half of the assessed value of all real property in the territory to be annexed. The Commission thereafter conducted a public hearing on the petition, entitled Proposal No. 1930, and commenced a study of the proposal, which considered the economic, demographic and sociological trends and projections, and physical development of the land to be annexed. In the findings of fact accompanying its final order, the Commission found that a majority of property owners in the area desired annexation to obtain city services, that the cost of providing police protection and utilities would be reduced as a result of the annexation, that the city had expended considerable funds to improve industrial access routes to the territory and that the city planned two additional construction projects in the area.

Regarding petitioner's interest in the proposed

---

[1] ORS 222.750 provides:

"In any case where land or territory is surrounded by the corporate limits or boundaries of any city, it is within the power and authority of that city to annex such land or territory, provided it is not an incorporated city. Unless otherwise required by its charter, annexation by a city under this section shall be by ordinance or resolution subject to referendum, with or without the consent of any owner of property within the territory or resident in the territory."

*See Consolidated Metco v. City of Portland,* 68 Or App 395, 681 P2d 1184 (1984).

annexation, the Commission stated:

> "11.  * * *

> "* * * The law allows the City and the Boundary Commission to add non-consenting properties to the proposal within the parameters of the triple-majority requirements. The City has determined to include the six non-consenters in the proposal rather than lands within Ramsey Villa Acres [petitioner's members' property] for the following reasons:

> "a)  There are numerous ownerships within Ramsey Villa Acres. These owners could not be included within the triple-majority factors.

> "b)  An alternative annexation initiation method could propose annexation of the entire area. All annexation initiation methods other than 'triple-majority' and 'island' are subject to a remonstrance. The only residents in the area are located in Ramsey Villa Acres. The Rivergate Residents Association is on record as opposing being annexed. It would not serve the interests of the City nor the petitioning property owners to hold an election on an annexation.

> "c)  Rivergate Residents Assn. are appellants in pending litigation.

> "* * * * *

> "15.  A representative of the Rivergate Residents' Association objected to the annexation because it islands their area, thus raising the possibility of the islanded area's being annexed under the 'island' annexation statute (ORS 222.750) which does not allow for a vote in the annexed territory. Several commissioners asked the representative if he could suggest a way to annex the property the owners of which had petitioned, without islanding the Rivergate Residents' Association area. The representative indicated he did not have an answer to this."

The Commission further wrote that, on the basis of those findings, it had weighed the interests of the owners who did not desire to be surrounded by the city against the rights of the consenting property owners and the city to petition for annexation, and had chosen to proceed with the annexation.

Petitioner contends that the deliberate "islanding" of its members' property deprives them of their constitutional

right to vote on annexation, but it cites no specific constitutional provision guaranteeing that right. Rather, it relies on the United States Supreme Court's decisions in *Carrington v. Rash,* 380 US 89, 85 S Ct 775, 13 L Ed 2d 675 (1965), and *Gomillion v. Lightfoot,* 364 US 339, 81 S Ct 125, 5 L Ed 2d 110 (1960), and the Oregon Supreme Court's decision in *Thurber v. McMinnville,* 63 Or 410, 128 P 43 (1912), as providing the inference that such a right exists. Although petitioner is correct in contending that both *Carrington* and *Gomillion* prohibit the application of state law to frustrate an individual's right to vote, those cases were decided in the context of the type of invidious discrimination prohibited by the Fourteenth and Fifteenth Amendments which is not at issue here. Neither case discussed whether property owners are entitled, as a matter of constitutional right, to vote on the question of annexation.

If there is any support for petitioner's contention that there is a constitutional right to vote on annexation, it must be found in *Thurber v. McMinnville, supra.* In that case, the plaintiff challenged the annexation of his property by amendment of the city's municipal charter, accomplished by the vote of only those residing within the city. In invalidating the annexation, the Supreme Court stated that, although Article IX, section 2, of the Oregon Constitution (*as amended* in 1910) authorized the adoption and amendment of city charters as they pertained to matters within city boundaries,

> "* * * that it was ever intended that a municipal corporation already in existence should have authority to extend its boundaries so as to include new territory without the consent of the citizens of such territory is so repugnant to our ideas of fairness and justice that we cannot assent to the proposition. * * *" 63 Or at 414.

The court emphasized that, in the absence of "legislative authority granted to all cities of the same class," legislation by cities outside municipal limits is ineffectual.[2] 63 Or at 416. Although the court acknowledged that Article XI, section 2, is

---

[2] In *State ex rel Heinig v. Milwaukie et al,* 231 Or 473, 373 P2d 680 (1962), the Supreme Court specifically overruled *Thurber v. McMinnville, supra,* to the extent that it held that Article XI, section 2, "being a grant of the sovereign power of the State to the particular local subdivision named, and being a limitation on the power of the legislature," should be strictly construed.

broad enough to permit some deviation in detail from the method of annexation by cities approved by the legislature, it concluded, apparently on the basis of the initiative and referendum powers reserved to municipal voters,[3] that

> "* * * the right of the people of the district or territory sought to be annexed to be permitted to vote upon the question under some method is a constitutional one that cannot be taken away." 63 Or at 417.

■■ Because petitioner has not shown that its members have been deprived of a constitutional right to vote on annexation of their property by the adoption of Proposal No. 1930, however, we need not decide whether the holding of *Thurber v. McMinnville, supra,* or the current version of the initiative and referendum amendment (Article IV, section 1(5)) guarantees that right. Proposal No. 1930 was adopted pursuant to the so-called triple-majority annexation procedure outlined in ORS 199.490(2), which insulates it from a vote of the people in the territory to be annexed. ORS 199.495(1). Because petitioner's members' property was excluded from the annexation, it lacks the requisite "injury in fact" to challenge the approved annexation. *See generally Ore. Newspaper Pub. v. Peterson,* 244 Or 116, 121, 415 P2d 21 (1966). While the proposal adopted effectively creates an "island" of petitioner's members' land, thereby arguably subjecting it to summary annexation pursuant to ORS 222.750,[4] the city has not attempted to annex that property,[5] and the

---

[3] At that time, Article IV, section 1a, of the Oregon Constitution provided in part:

> "The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special, and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws."

[4] Although both parties apparently agree that ORS 222.750 allows summary annexation, we are not unmindful of the fact that the statute is susceptible to an alternative interpretation. That question is not properly before us, however.

[5] During the Public Hearings on Proposal No. 1930, Bill Dirker testified that the city did initiate the annexation of petitioner's members' property once before. Regarding the city's current plans, however, he stated:

> "We have made no decision on this, on the re-annexation of the Rivergate Resident's property. I am in no position to say what we're going to do on that. If I have to say, if you look down the road 10, 20 years, some how or other it will be in the City. But, facts and circumstances of the case will have to be dealt with at that time."

challenged proposal acknowledges the members' desire to be excluded from the annexation. As the court stated in *Gortmaker v. Seaton,* 252 Or 440, 442, 450 P2d 547 (1969):

> "It is fundamental to appellate jurisprudence that courts do not sit 'to decide abstract, hypothetical, or contingent questions * * * or to decide any constitutional question in advance of the necessity for its decision * * *.'" (Quoting *Federation of Labor v. McAdory,* 325 US 450, 461, 65 S Ct 1384, 89 L Ed 1725 (1945).)

*See also Granata v. Tanzer,* 31 Or App 21, 569 P2d 1090 (1977). When and if the city decides to annex the islanded property, the issue will be ripe for consideration.

The remaining question is whether the proposal is invalid because it is "arbitrary, unreasonable, unjust or unnecessary," within the meaning of *Portland Gen. Elec. Co. v. City of Estacada,* 194 Or 145, 241 P2d 1129 (1952), where the court stated:

> "* * * [I]n statutes empowering cities to legislate annexation proceedings, there is implied within the legislative grant that such cities must legislate reasonably and not arbitrarily, and such reasonableness is a part of the legislative grant to the same extent as if it were written literally into the statute." 194 Or at 159.

Although the court listed several grounds on which city limits could and, alternatively, could not reasonably be extended, it emphasized that its list was not exclusive and that "each case must depend upon its own facts." 194 Or at 165. Petitioner contends that Proposal No. 1930 is unreasonable, because: (1) it carves out an irregularly shaped parcel, the effect of which is to "island" its members' property, and (2) it allegedly allows the annexation of contiguous lands which are "vacant, and do not derive special value from their adaptability for city uses," a rationale specifically disapproved as "unreasonable" in *Portland Gen. Elec. Co. v. City of Estacada, supra.*

■■ Although petitioner correctly notes that an irregularly shaped parcel raises a red flag as to the reasonableness of the annexation proposed, *see, e.g., Mar. Fire Dist. v. Polk Bndry,* 19 Or App 108, 526 P2d 1031, *rev den* (1974), here, the proffered explanation is sufficient to dispel any suspicion raised by the irregular shape. As counsel for petitioner admitted at the Commission hearing, there was no way in which the

city could have annexed the property of the owners who had petitioned without creating an island of petitioner's members' property. Faced with a Hobson's choice, dictated by the city's strict compliance with the triple majority statutory procedures, the Commission acted within its authority in rejecting petitioner's contention that the proposal was unreasonable.

■ Neither does the proposed annexation fall within the class of those specifically disapproved as "unreasonable" in *Portland Gen. Elec. Co. v. City of Estacada, supra,* as petitioner contends. The annexation encompasses a heavy industrial area with little vegetation. Although the area is unpopulated, it cannot be considered vacant. Moreover, the other property owners' expressed desire to be absorbed by the city in order to permit the more efficient and economical delivery of urban services is sufficient to dispel any notion that there was no value to be derived from the annexation.

■ Finally, we reject petitioner's contention that the annexation must be invalidated because the Commission failed to consider its members' interests, as required by ORS 199.462(1) and *City of Wood Village v. Portland Metro. Area LGBC,* 48 Or App 79, 616 P2d 528 (1980). ORS 199.462(1) provides that in order to carry out the purposes described by ORS 199.410,[6] the Commission shall:

> "* * * consider economic, demographic and sociological trends and projections pertinent to the proposal, past and prospective physical development of land that would directly or indirectly be affected by the proposed boundary change or application under ORS 199.464 and the goals adopted under ORS 197.225 when applicable under ORS 199.410(2)(d)."

In *City of Wood Village,* we concluded that the term "pertinent

---

[6] The purposes of ORS 199.519 are to:

"(a) Provide a method for guiding the creation and growth of cities and special service districts in Oregon in order to prevent illogical extensions of local government boundaries;

"(b) Assure adequate quality and quantity of public services and the financial integrity of each unit of local government;

"(c) Provide an impartial forum for the resolution of local government jurisdiction questions; and

"(d) Provide that boundary determinations are consistent with local comprehensive planning, in conformance with statewide planning goals."

to the proposal" is as broad as the phrase "land directly or indirectly affected by the proposed annexation" and would include a consideration of the effect the annexation would have on surrounding cities, where evidence is offered on the subject. We also found that the Commission's failure to consider the interests of people "islanded" by the proposed annexation, after hearing substantial testimony regarding the problems that would be created by islanding, seriously undermined the Commission's conclusion that the boundary change was a logical one.

Here, insofar as we can determine from the record, the only evidence presented was that petitioner's members did not desire annexation of their property. There is no indication of how the proposal would affect petitioner's members' interests, adversely or otherwise, other than to make an island of their property. For that reason, the Commission's findings were adequate to support its conclusion that the boundary change was logical and should be approved.[7]

Affirmed.

---

[7] Petitioner's argument that the Commission violated ORS 199.461(2) is not clear. While that statute requires that if the Commission finds that property has been improperly omitted from a proposal, it shall modify the proposal to include it, petitioner has contended throughout that it did not desire to be included in the annexation.