Argued and submitted October 20, affirmed December 13, 1995

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT
and Warren Neighborhood Association,
*Respondents,*

*v.*

CITY OF ST. HELENS,
*Petitioner,*

*and*

WAL-MART STORES, INC.,
Westech Engineering, Inc., Richard L. Kohlstrand,
Edmond T. Burton and Martha E. Burton,
*Intervenors-Respondents Below.*

(LUBA No. 94-029)

OREGON DEPARTMENT OF TRANSPORTATION
and Warren Neighborhood Association,
*Respondents,*

*v.*

CITY OF ST. HELENS,
*Petitioner,*

*and*

WAL-MART STORES, INC.,
Westech Engineering, Inc., Richard L. Kohlstrand,
Edmond T. Burton and Martha E. Burton,
*Intervenors-Respondents Below.*

(LUBA No. 94-030; CA A89817)

907 P2d 259

Richard D. Rodeman argued the cause for petitioner. On the brief was Peter M. Linden.

Michael F. Sheehan argued the cause and filed the brief for respondent Warren Neighborhood Association.

Richard D. Rodeman filed the brief *amicus curiae* for League of Oregon Cities.

Stephen Madkour, Assistant Attorney General, waived appearance for respondent Department of Land Conservation and Development.

No appearance for respondent Oregon Department of Transportation.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

The City of St. Helens annexed a parcel of property that lies approximately 1,500 feet outside the city limits, but is within the city's urban growth boundary (UGB). Simultaneously, the city annexed a 1,500-foot stretch of public road, which is also within the UGB and which connects the "target property" to the city, and made related land use decisions to advance the possible eventual use of the property for a Wal-Mart store. The Warren Neighborhood Association (respondent) and others[1] appealed the city's annexation and other decisions to LUBA. Although LUBA remanded the decisions on several additional grounds, the city seeks our review only of LUBA's conclusions that the so-called "cherry stem annexation" is unreasonable *per se* and that it violates ORS 222.111(1). We affirm, although for reasons that differ from LUBA's in several respects.

The term "cherry stem annexation" that the parties use refers to the annexation of a noncontiguous "target parcel" (the "cherry"), together with the territory between that parcel and the city (the "stem"), that is necessary to make the parcel and the city contiguous.[2] ORS 222.111(1), like many annexation statutes, requires contiguousness or some variation of it. The statute provides:

> "When a proposal containing the terms of annexation is approved in the manner provided by the charter of the annexing city or by ORS 222.111 to 222.180 or 222.840 to 222.915, the boundaries of any city may be extended by the annexation of territory that is not within a city and that is contiguous to the city or separated from it only by a public right of way or a stream, bay, lake or other body of water. Such territory may lie either wholly or partially within or without the same county in which the city lies."

LUBA analyzed the statute, as do we, as containing an implied "reasonableness" requirement derived from applicable case law, in addition to the express requirements that the statute states. LUBA first concluded that the annexation in question does not comply with the reasonableness requirement. It explained that

---

[1] Only the city and the association are parties in this court.

[2] Other descriptive phrases, *e.g.*, "dumbbell shaped," have been used in connection with annexations of this kind. We will use the phrase that the parties do.

"cherry stem annexations frustrate the contiguity require-
ment of ORS 222.111(1). Cherry stem annexations are inher-
ently unreasonable. *See Portland Gen. Elec. Co. v. City of
Estacada*, 194 Or 145, 159, 291 P2d 1129 (1952)."

LUBA then addressed the city's contention that the annexed
area was "separated from [the city] only by a public right of
way." The city maintained, as summarized by LUBA,

"that the connecting section of Old Portland Road that is to
be annexed is all that separates the subject property from the
city limits,"

and that that was sufficient to satisfy the statutory criterion.
LUBA disagreed, concluding that the city's understanding

"runs contrary to the meaning of 'separate,' which means 'to
set or keep apart; detach.' *Webster's Third International
Dictionary* 2069 (1981). The city would redefine 'separated
from' to mean 'joined to.' The * * * language is more reason-
ably interpreted to make it permissible for a city to annex
territory located across a public right-of-way where the terri-
tory is needed for natural growth."

The parties' arguments turn in large measure on
whether LUBA was correct in its understanding of *Portland
Gen. Elec.* In that case, the city annexed a utility facility and a
narrow connecting strip of mostly vacant land that was
largely forested. The court considered a predecessor of ORS
222.111 and noted that annexation statutes carry with them
an implied requirement that "cities must legislate reasonably
and not arbitrarily." 194 Or at 159. The court set forth
certain situations that are presumptively reasonable and
certain situations that are presumptively not. Cherry stem
annexations, by that or any other name, were not cate-
gorically included in either list, although the court suggested
in *dictum* that the annexation of "territory far removed from
the city environs" but made contiguous by a "narrow ribbon
strip" would not qualify as reasonable. *Id.* at 160. Notwith-
standing its list of "do's and don'ts," the court concluded in
*Portland Gen. Elec.* that its listings were not exclusive, "since
each case must depend upon its own facts." *Id.* at 165.
Ultimately, the court's determination that the annexation in
*Portland Gen. Elec.* was unreasonable seems to have turned
on the facts that the assessed value of the utility's property
would double the city's tax rolls and, due to lack of effective

access and other factors, the utility would receive little in the way of urban benefits by being brought into the city, whose largest taxpayer it would become.

Unsurprisingly, respondent argues here that LUBA's strict application of *Portland Gen. Elec.* is correct, while the city emphasizes that all that the case *mandates* is a test of "reasonableness." In *Rivergate Residents Assn. v. Portland Metro Area*, 70 Or App 205, 689 P2d 326 (1984), *rev den* 298 Or 553 (1985), and *Mar. Fire Dist. v. Polk Bndry.*, 19 Or App 108, 526 P2d 1031, *rev den* (1974), we took the view that accords with the city's here. In both cases, we referred to the language in *Portland Gen. Elec.* regarding the case-specific and fact-dependent nature of the inquiry, and in both we effectively upheld the reasonableness of annexations of "irregularly shaped" parcels.

The city and the *amicus* also argue that, to whatever extent *Portland Gen. Elec.* is contrary to their position, it has little remaining vitality, because the land use laws enacted since the Supreme Court's 1952 decision apply to annexations and, in other ways, now specifically govern the matters to which the court's decision related. We do not agree that the "reasonableness" test of *Portland Gen. Elec.* has been legislatively repealed by the subsequently-enacted land use legislation; however, we do conclude that the legislation has bearing on *what is* reasonable. The reasonableness question is no longer one that depends solely or mainly on unguided judicial determinations, but is now largely controlled by specific legislative and regulatory criteria.

Drawing on that theme, the *amicus* argues in essence that a city's annexation of property within its acknowledged UGB is reasonable *per se*. We need not go that far, because we conclude that *Portland Gen. Elec.* never did, and current law surely does not, support LUBA's conclusion that all cherry stem annexations are *un*reasonable *per se*. We conclude that this annexation survives the reasonableness inquiry.

Among the factors that the court pointed to in *Portland Gen. Elec.* as *favoring* a finding of reasonableness are that the contiguous properties "represent the actual growth of the town beyond its legal boundary," "are valuable by

reason of their adaptability for prospective town uses," or are needed "for the extension of its streets * * * or to supply places for the abode or business of its residents." 194 Or at 165. We conclude as a matter of law that the annexation of the "target property" and the connecting road survive the implied reasonableness test of *Portland Gen. Elec.*

■     The remaining question is whether the annexation also satisfies the express requirements of ORS 222.111. LUBA rejected the city's argument that the target property, which is separated from the city by the 1,500-foot road, qualifies as an area that is "separated from it only by a public right of way." Therefore, independent of its other bases for the conclusion, LUBA held that the area does not meet the criteria for annexation under ORS 222.111(1). That ruling by LUBA appears to be a curious one, because the city in fact annexed the road as well as the target area that the road connects to the city. Seemingly, that fact would make the entire annexed area contiguous to the city, and would make the "separated * * * by a right of way" criterion immaterial.[3] However, the basis on which LUBA decided the statutory question was responsive to the contentions that the parties presented.

The city does not argue here, and apparently did not argue to LUBA, that the annexation of the road *and* the target *together* satisfied the contiguousness requirement and was, therefore, in compliance with the statute. The city argues instead that, contrary to LUBA's interpretation, the annexation of the target property is permissible, on the theory that the 1,500-foot connecting road is a public right-of-way and that the "separation" test in the statute is satisfied by the relationship between the city, the target area and the road that ostensibly separates them.

■     We disagree with the city's argument concerning the meaning of the "separation" provision in ORS 222.111(1). The text of the provision, in its context, compels the conclusion that separation by a *minimal* amount of intervening land of the described kind is the only acceptable alternative or

---

[3] We recognize that the status of the annexation of the road could be affected by the other bases for LUBA's remand and by the city's proceedings on remand. As things now stand, however, the annexation of the road is a component of the decisions that respondent appealed to LUBA.

exception to the contiguousness requirement. The phrase "separated from it" is followed and the phrase "by a public right of way" is preceded in the statute by the word "only." Although we might agree with the city that LUBA unduly emphasized the *nature* of the separation, *i.e.*, width versus length, we do not agree that LUBA was wrong in the emphasis that it implicitly placed on the *extent* of the separation. A 1,500-foot road does not satisfy the "separated * * * only" test in ORS 222.111(1).

Given the arguments that the parties present, we expressly do not decide whether the annexation of *both* the road *and* the target property, which in fact occurred, complies with the requirements of ORS 222.111(1). LUBA's holding that the statute was violated here has not been shown to be erroneous by the argument that the city does make.

Affirmed.