Argued and submitted September 9, reversed and remanded December 9, 2003

Phillip MORSMAN
and Brigitte Morsman,
*Petitioners,*

*v.*

CITY OF MADRAS,
*Respondent.*

2003-040; A122113

81 P3d 711

Michael F. Sheehan argued the cause and filed the brief for petitioners.

Robert Lovlien argued the cause for respondent. With him on the brief was Bryant, Lovlien & Jarvis, P.C.

Before Edmonds, Presiding Judge, and Armstrong and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

The City of Madras passed an ordinance annexing some contiguous territory. Petitioners, who own a trailer park in the annexed area, appealed the annexation to the Land Use Board of Appeals (LUBA), alleging, among other things, that the annexation did not meet the "reasonableness" requirement imposed by earlier cases from this court and the Supreme Court. Petitioners also alleged that the annexation was void because the city failed to demonstrate that the annexation complied with state and local land use planning criteria. LUBA rejected petitioners' reasonableness argument but agreed that the city had not demonstrated compliance with land use laws and remanded the city's decision for further proceedings on that question and a variety of others. Petitioners seek judicial review, assigning error only to the part of LUBA's opinion declaring the annexation to be reasonable. We reverse that part of LUBA's opinion and remand.

The basic facts and procedural history are not in dispute. The city effected the annexation by using the "triple-majority" process set out in ORS 222.170(1):

"The legislative body of the city need not call or hold an election in any contiguous territory proposed to be annexed if more than half of the owners of land in the territory, who also own more than half of the land in the contiguous territory and of real property therein representing more than half of the assessed value of all real property in the contiguous territory consent in writing to the annexation of their land in the territory and file a statement of their consent with the legislative body * * *."

The city obtained the necessary consents, held a two-session hearing, and then passed an ordinance approving the annexation.

The annexed territory adds some 759 acres to the existing 1,465-acre city, resulting in a 50 percent increase in the city's corporate territory. The annexation is of the "cherry stem" variety, so called because the bulk of the annexed property (the "cherry") is connected to the city by an annexed, narrow 300-foot section of the Warm Springs Highway (the

"stem"). *See Dept. of Land Conservation v. City of St. Helens,* 138 Or App 222, 225, 907 P2d 259 (1995). Much of the annexed area is occupied by an already developed industrial park, the city's sewage treatment plant, its airport, and some residential properties including petitioners' 60-unit low income mobile home park. Some residential developments adjacent to the "stem" portion of Warm Springs Highway are not included in annexed territory and remain outside of the city. The newly added area is within the city's urban growth boundary.

■     Petitioners' major argument before LUBA, which they again raise on review, was that the city's decision was not reasonable. The facts underlying LUBA's conclusion that the annexation was reasonable are not disputed; the only issue is whether those facts adequately support the conclusion, a question we review for legal error. *City of St. Helens,* 138 Or App at 228. The terms of the argument are framed by *Portland Gen. Elec. Co. v. City of Estacada,* 194 Or 145, 160-65, 241 P2d 1129 (1952), as explained and amplified in *City of St. Helens.* In *Portland Gen. Elec. Co.,* 194 Or at 159, the Supreme Court, evaluating the validity of an oddly shaped annexation under the predecessor to the current annexation statute, held:

> "From time immemorial, we have consistently held that in the interpretation of state statutes relating to the enactment of legislation or ordinances by a city that the same must be exercised reasonably and not arbitrarily; therefore, in statutes empowering cities to legislate annexation proceedings, there is implied within the legislative grant that such cities must legislate reasonably and not arbitrarily, and such reasonableness is a part of the legislative grant to the same extent as if it were written literally into the statute."

The court went on to describe a number of factors that could be taken into account in determining reasonableness. In *dictum,* it suggested that

> "[i]t would be absurd to think that the legislature intended that a city would have carte blanche authority to reach out its tentacles like an octopus and envelop property which in no wise could be considered as beneficial to the city or to the

property annexed. If this were not so, there would be nothing to prevent the cities from attaching to themselves territory far removed from the city environs by a narrow ribbon strip, so long as the property attached was contiguous."

*Id.* at 159-60. Ultimately, the court decided that "[n]o exact yardstick can be laid down as to what is reasonable and what is not," *id.* at 165, and declared that the annexation at issue was unreasonable principally because it "was employed for the sole purpose of enhancing the revenues of the city in an amount practically twice that which the city now enjoys * * *." *Id.* at 166.

■    In subsequent cases, we have held that *Portland Gen. Elec. Co.* does not make "irregularly shaped" annexations *per se* unreasonable. *Rivergate Residents Assn. v. Portland Metro Area*, 70 Or App 205, 689 P2d 326 (1984), *rev den*, 298 Or 553 (1985); *Mar. Fire Dist. v. Mar. Polk Bndry*, 19 Or App 108, 526 P2d 1031, *rev den* (1974). Most recently, we upheld the reasonableness of a cherry-stem annexation in *City of St. Helens*, 138 Or App 222. In that case, the state argued that *Portland Gen. Elec. Co.* should be strictly construed so as to invalidate the city's cherry-stem annexation, while the city, for its part, contended that the judicially created "reasonableness" standard from *Portland Gen. Elec. Co.* had been superseded by land use laws enacted after that 1952 decision. *Id.* at 227. We rejected both contentions. We first reaffirmed the *Portland Gen. Elec. Co.* court's determination that annexation legislation contains an implied reasonableness requirement and updated the decision by concluding that the requirement inheres in ORS 222.111(1), which provides:

"When a proposal containing the terms of annexation is approved in the manner provided by the charter of the annexing city or [state law], the boundaries of any city may be extended by the annexation of territory that is not within a city and that is contiguous to the city * * *."

*City of St. Helens*, 138 Or App at 225. We also held that, although land use statutes enacted since 1952 do not "repeal" the reasonableness test, that legislation "has a bearing on *what is* reasonable. The reasonableness question is no longer

one that depends solely or mainly on unguided judicial determinations, but is now largely controlled by specific legislative and regulatory criteria." *Id.* at 227 (emphasis in original).

■ Thus, the "reasonableness" standard that petitioners argue the city failed to meet still applies. They first contend that the annexation is unreasonable under *Portland Gen. Elec. Co.* for several reasons: the annexation was driven by the city's desire for a property tax windfall, the annexation will not provide the annexed area with significant benefits, the annexation irrationally includes some high-density residential properties and excludes others, and the city has shown no need to expand. We agree that those factors, as well as the annexed territory's unusual shape, suggest a degree of unreasonableness. *See Portland Gen. Elec. Co.*, 194 Or at 160-64. If the case law set a high barrier to annexation, perhaps petitioners' arguments would prevail. But that is not the case. "Unreasonableness" as originally articulated in *Portland Gen. Elec. Co.* is akin to arbitrariness; the court stated that "there is implied within the legislative grant [a rule] that such cities must legislate *reasonably and not arbitrarily.*" *Id.* at 159 (emphasis added). In *Kampstra v. Salem Hts. Water Dist.*, 237 Or 336, 340, 391 P2d 641 (1964), the court characterized the *Portland Gen. Elec. Co.* standard as one that shows due deference to legislative decisions by municipal authorities unless the decisions are "arbitrary or unreasonable." Indeed, although the court has never identified the source of the reasonableness requirement, it appears to derive from—or at least bear a close resemblance to—the general reasonableness requirement that the United States Supreme Court imposes on all legislation by virtue of the Due Process Clause of the Fourteenth Amendment. That requirement, at least insofar as social and economic legislation is concerned, is notoriously lax. *See, e.g., Williamson v. Lee Optical*, 348 US 483, 487, 75 S Ct 461, 99 L Ed 563 (1955) (upholding "needless, wasteful" Oklahoma law against due process challenge because such laws are within legislative competence). We therefore agree with the following assessment from LUBA's order in this case:

> "The * * * reasons offered by petitioners for finding that the disputed annexation is unreasonable under *PGE v. Estacada*, whether they are viewed alone or together, are

not persuasive. There is nothing unreasonable about a city decision to annex adjacent industrially planned, zoned and developed land that includes the city's sewage treatment plant and airport. That the disputed annexation might have been more complete if certain intervening residentially zoned and developed property had been included does not render the annexation unreasonable under *PGE v. Estacada.*"

Petitioners also argue that the failure to demonstrate that the annexation complies with land use laws also supports the conclusion that it is not reasonable. As petitioners phrase this part of their argument, "If 'reasonableness' is to be judged in the context of the applicable law, how can the annexation be found to be reasonable in the absence of *any* findings showing *how* the proposal complies with the law?" (Emphasis in original.) In light of what this court held in *City of St. Helens*—that compliance with land use laws is the "largely controll[ing]" component of the reasonableness test—petitioners are correct. LUBA held, and the city does not disagree, that the city "simply failed to recognize that it must demonstrate that the disputed annexation is consistent with" local or state land use criteria. Until the city has demonstrated that the annexation meets those criteria, no definitive conclusion as to reasonableness is possible. LUBA's conclusion was therefore at least premature; before deciding whether the annexation is reasonable, LUBA must remand to the city for a determination as to whether the annexation meets statutory land use criteria.

The relief we order appears to duplicate what LUBA ordered in the first instance: both require remand to the city for determination of compliance with land use law. However, by requiring remand to the city as well as reversing LUBA's decision regarding reasonableness, we leave open the remote possibility that, in the process of adducing facts regarding land use criteria compliance, petitioners or others could discover facts that, while not indicating noncompliance, nonetheless render the annexation unreasonable under *Portland Gen. Elec. Co.* standards. Thus, LUBA's remand pursuant to this opinion, leaving open the ultimate reasonableness determination, differs from LUBA's original remand, under which

that determination is fixed, and that difference could be significant.

Reversed and remanded.