Argued and submitted March 6, 2009, affirmed February 17, 2010

CITIZENS AGAINST ANNEXATION,
Debby Todd,
Citizens for Florence,
and Thomas P. Link,
*Petitioners,*

*v.*

LANE COUNTY LOCAL GOVERNMENT
BOUNDARY COMMISSION,
*Respondent,*

*and*

CITY OF FLORENCE,
*Intervenor-Respondent.*

Agency/Board/Other
1316; A137162

226 P3d 711

Daniel J. Stotter argued the cause for petitioner Citizens Against Annexation. With him on the briefs was Irving & Stotter LLP.

Jannett Wilson and Goal One Coalition filed the brief for petitioners Citizens for Florence and Debby Todd.

William H. Sherlock argued the cause for petitioner Thomas Link. With him on the briefs was Hutchinson, Cox, Coons, DuPriest, Orr & Sherlock, P.C.

Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, waived appearance for respondent.

Ross M. Williamson argued the cause for intervenor-respondent. With him on the brief were Jerome Lidz and Harrang Long Gary Rudnick P.C.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

* Brewer, C. J., *vice* Edmonds, P. J.

SERCOMBE, J.

## SERCOMBE, J.

Petitioners seek review of an order of the Lane County Local Government Boundary Commission (commission). The order approved an annexation request by the City of Florence (city) under the commission's authority to make "minor boundary changes."[1] An annexation minor boundary change can be initiated by a resolution of the commission, by a city resolution, or by petitions of property owners or resident electors. ORS 199.490(1). In order to initiate an annexation proceeding by city resolution, however, a city must receive consents of the affected property owners or electors calculated in two alternative ways—one known as a "triple majority" consent and the other a "double majority" consent. ORS 199.490(2).

In this case, the city initiated the minor boundary change proceeding after receiving property owner consents from nearly all of the property owners in the affected territory. The city initially stated that it was proceeding on a "double majority" basis, but later switched its justification to the "triple majority" basis. On review, petitioners contend that the original calculation of property owner consent referenced in the initiating resolution was binding and insufficient to allow the resolution, and that the commission's order was void because its proceedings were started improperly. Petitioners further assert that the commission denied them procedural rights by changing the method for calculating property owner support for the city's initiating resolution after the close of the public hearing and that the commission did not make findings in the record about how the annexation complied with statewide land use planning goals. We review for errors of law, ORS 183.482(8), and affirm.

---

[1] *See* ORS 199.460 (jurisdiction of commission over boundary changes); ORS 199.415(4) (definition of "boundary change" as "a major or minor boundary change"); ORS 199.415(12) ("minor boundary change" as including "annexation * * * of territory to * * * a city"). The Lane County Boundary Commission was abolished by the 2007 Oregon Legislative Assembly. Or Laws 2007, ch 239, §§ 1 - 7, 16. The boundary change at issue was adopted before July 1, 2008, the effective date of that law. All references to provisions of ORS chapter 199 in this opinion refer to the 2007 versions of the statutes that were in effect when the annexation was approved by the commission.

We begin with a brief summary of processes used by the boundary commission to approve city annexations. For many years, boundary commissions in the Portland metropolitan area, Marion County, and Lane County decided major and minor boundary changes. A "major boundary change" was "formation, merger, consolidation or dissolution of a city or district." ORS 199.415(11). A "minor boundary change" was an "annexation, withdrawal or transfer of territory to or from a city or district or a transfer of territory from a city-county to a city." ORS 199.415(12).

The manner of initiating a boundary change differed depending on whether it was a minor or major boundary change. *Compare* ORS 199.476 - 199.485 (initiation of major boundary change), *with* ORS 199.487 and ORS 199.490 (initiation of minor boundary change). Under ORS 199.490(1), certain minor boundary changes, including annexations, could be initiated by resolution of the affected city or district. However, in order for an annexation to be initiated by a city council resolution, ORS 199.490 required that the annexation be supported by property owners and/or electors in the territory to be annexed—*i.e.*, that they consent in writing. That statute provided, in part:

"(2)(a)(A)   An annexation proceeding may also be initiated by a resolution adopted by the governing body of the affected city or district upon receiving consent to annex their land in writing from more than half of the owners of land in the territory proposed to be annexed, who also own more than half of the land in the territory proposed to be annexed and of real property therein representing more than half of the assessed value of real property in the territory proposed to be annexed.

"(B)   A resolution adopted by the governing body of the affected city or district upon receiving written consent to annexation from a majority of the electors registered in the territory proposed to be annexed and written consent to the annexation of their land from the owners of more than half the land in the territory proposed to be annexed."

In short, a city council resolution for an annexation could be initiated in either of two ways: (1) under ORS 199.490(2)(a)(A) by a "triple majority" consent of property

owners or (2) under ORS 199.490(2)(a)(B) by a "double major- ity" consent of property owners and electors.

On June 18, 2007, the city adopted a resolution ini- tiating annexation of the Fawn Ridge Subdivision. The city had received consents from 40 of the 43 affected property owners, representing 96 percent of the annexation area (excluding streets), and 98 percent of the assessed value of the territory to be annexed. The resolution made findings of compliance with relevant land use standards and directed the filing of the resolution and "certified copies of the state- ments of consent" with the commission. The findings in the resolution referred to the consents as justifying initiation of the minor boundary change under ORS 199.490(2)(a)(B), the "double majority" consent. The reference to "double majority" consent—which required consent of electors—would later prove controversial because, although a few of the lots in the annexation territory were improved, there were no resident electors in the territory. Nonetheless, the city then filed an annexation application with the commission on July 3, 2007, and again indicated, this time on an application check sheet, that the annexation resolution was authorized by a "double majority" consent to the annexation.

The commission considered the annexation at a pub- lic hearing on August 2, 2007. Petitioners presented written and oral testimony regarding the proposal, specifically noting that the "double majority" consent described in ORS 199.490(2)(a)(B) required a majority of the electors in a ter- ritory to consent in writing, but that the territory subject to this annexation contained no registered electors. Petitioners asserted that the "double majority" method for tallying con- sents did not apply and that the proceedings were started improperly. At the end of that hearing, the commission directed staff to obtain legal advice on how to proceed, given the mistaken identification of the type of consents. The public hearing was closed, and a special meeting was scheduled for September 27 to deliberate on the annexation.

At the September 27 meeting, the commission issued its final order approving the annexation. That order provides:

"WHEREAS, Resolution No. 8, Series 2007, by the city of Florence was filed on July 3, 2007—*in accordance with ORS 199.490(2)(a)*—for annexation of territory to the City of Florence, described in attached Exhibit A and shown on attached map Exhibit B; and,

"WHEREAS, the commission duly published notice of the public hearing in accordance with ORS 199.463 and in accordance with the rules of the commission and ORS 199.452(1), conducted a public hearing on August 2, 2007, and deliberated on September 27, 2007; and,

"WHEREAS, on the basis of the study of the proposal, which considered economic, demographic and sociological trends and physical development of the land *including the applicable comprehensive plan*, and of the public hearing, the commission approved the proposal and made the findings and reasons attached as Exhibit C.

"NOW THEREFORE IT IS ORDERED: That the area described be a part of the city of Florence."

(Emphasis added.) Exhibit C, attached to that order, includes the following findings:

"1.   This proposal was initiated with the boundary commission by the City of Florence *after receiving the necessary consents on July 3, 2007, in accordance with ORS 199.490(2)(a)(A)*. The proposal was found to be a valid filing under OAR 191-006.

"2.   Consents were received by the City of Florence representing more than half the owners of the land in the territory to be annexed, who own more than half the land, and the real property represents more than half of the assessed value of all the property in the territory to be annexed."

(Emphasis added.) The referenced exhibit details how the annexation will meet the policy considerations and "purposes" outlined in ORS 199.410. Finally, the exhibit lists "reasons" for the annexation, including that the "proposal was supported by the City of Florence and the owners of the properties proposed for annexation" and was "consistent with the LCDC acknowledged comprehensive plans." Neither the final order nor the attached exhibits discuss the statewide land use planning goals (goals).

Petitioners advance procedural claims of error that fall into two camps. First, petitioners make a number of assertions about the change in identifying the consents supporting the city resolution, a change from a "double majority" consent identified in the city resolution to a "triple majority" consent determined under the commission annexation order. We address those arguments together. Second, petitioners argue that the commission failed to make required findings that the annexation complied with the goals.

■ We turn first to petitioners claim that the city was required to file a notice of intent to annex that identified the particular type of annexation consent being sought before the city solicited written consents to the annexation. ORS 199.490(2)(b), which sets out procedural requirements for the city to adopt an annexation resolution, provides:

> "However, before soliciting statements of consent for the purpose of authorizing an annexation under a proceeding initiated as provided by this subsection, the governing body of the affected city or district shall file a notice of intent to annex with the boundary commission having jurisdiction of the affected territory. The notice of intent to annex shall name the affected city or district and generally describe the boundaries of the territory sought to be annexed, which territory must be contiguous to the city or district or separated from it only by a public right of way or a stream, bay, lake or other body of water. The notice of intent to annex shall have attached to it a county assessor's cadastral map showing the location of the affected territory that the city or district proposes to annex."

Thus, the statute sets out a number of requirements for the notice of intent, none of which directs that the notice identify the annexation consents as calculated under the "double majority" or "triple majority" method. Here, the city "file[d] a notice of intent to annex" that "name[d] the affected city * * * and generally describe[d] the boundaries of the territory," and met the other statutory requirements. ORS 199.490(2)(b). There is no merit to petitioners' claim that the notice of intent to annex was defective.

The city then obtained signatures from landowners in the territory to be annexed that the city believed met the two "double majority" consent requirements: consent from

the owners of more than half the land, and zero consents from half of no registered electors (*i.e.*, zero divided by two is zero). ORS 199.490(2)(a)(B). The consents, in any event, were more than sufficient to meet the "triple majority" requirements of ORS 199.490(2)(a)(A). However, a finding in the city's resolution initiating the minor boundary change process described the initiation as "authorized by ORS 199.402(2)(a)(B)."

Petitioners appear to claim that the misidentification of the method of calculating consents in the resolution's findings undercuts its effectiveness in initiating the annexation process. ORS 199.490(2)(a), however, did not require the city resolution to accurately identify which method it would use to calculate consents. It merely required that the resolution be adopted "upon receiving consent to annex their land in writing" from a triple majority of property owners or "upon receiving written consent to annexation" from a majority of resident electors and property owners. There is no factual dispute that the city's resolution was adopted after receiving consents from a triple majority of property owners.[2] The city's resolution ordained only that the city recorder was "directed to file certified copies of the statements of consent and this Resolution with the Lane County Local Government Boundary Commission." The city's resolution was consistent with ORS 199.490(2)(a).

Petitioners next contend that the commission was deprived of authority to accept the initiating resolution as supported by a "triple majority" of property owners because the city's annexation resolution stated that initiation was authorized under ORS 199.402(2)(a)(B). Petitioners argue that the commission's authority to approve the annexation is contingent on the city making a resolution submitting that particular type of annexation to the commission before the

---

[2] Petitioners had the opportunity at the boundary commission hearing on the minor boundary change to argue and present evidence on the question of whether the annexation resolution was, in fact, supported by sufficient consents. Petitioners did not argue that the signatures were insufficient; they argued only that, as a matter of law, an annexation labeled by the city as supported by a "double majority" consent could not be approved as supported by a "triple majority" of property owners. Accordingly, we do not agree with petitioners that they were entitled to any additional notice or that their rights were prejudiced when the commission approved the annexation as supported by a "triple majority" of property owners.

public hearing. Respondents contend that the commission's authority to approve a "triple majority" annexation is not contingent on the city filing a resolution that accurately identifies the type of consents relied on. In the alternative, respondents also contend that, even if the commission erred, the error did not impair the fairness or correctness of the annexation, and so any error was harmless.

We have already decided that the city was not required to identify the annexation consents calculation method in the initiating resolution. Under the plain terms of ORS 199.490(2)(a), the sufficiency of a resolution initiating an annexation depends on whether the city had received sufficient consents as a matter of fact. Because the city had received sufficient consents, the minor boundary change was properly started under ORS 199.490, and the commission did not err in so concluding.

Moreover, there is nothing in the approval criteria for a minor boundary change that links that approval to the correctness of findings in a city resolution initiating annexation. The commission applied ORS 199.462(1) to evaluate the minor boundary change. That statute provides:

> "In order to carry out the purposes described by ORS 199.410 when reviewing a petition for a boundary change * * *, a boundary commission shall consider local comprehensive planning for the area, economic, demographic and sociological trends and projections pertinent to the proposal, past and prospective physical development of land that would directly or indirectly be affected by the proposed boundary change * * * and the goals adopted under ORS 197.255."

Nothing in that statute suggests that the commission is required to consider whether the annexation was initiated using a particular consent method as part of its approval process or that accepting an initiating resolution after a change for "triple majority" to "double majority" consents would be in error.

Similarly, ORS 199.461(4) describes the record for approval or disapproval of a boundary change petition:

> "*On the basis of the study* and *on the basis of the facts* presented at the hearing, the boundary commission shall approve the proposed boundary change * * * as presented or *as modified by the commission* or disapprove the proposed change, by an order stating the reasons for the decision of the commission."

(Emphasis added.) Here, too, the statute does not limit the commission's authority to accept an initiating resolution when there is an incorrect finding on the type of consents received. The commission uses the "facts" presented at the hearing, which may include the procedural facts, as one basis for approving or disapproving the annexation. Given the commission's power to modify a proposal before approval and those statutory directives to review and approve a proposal based on specific substantive criteria, we find no basis to conclude that the commission lacks authority to approve an annexation under ORS 199.490(2)(a)(A) simply because of an incorrect finding in an initiating resolution. The commission did not err as a matter of law in approving the annexation. Accordingly, we affirm as to those assignments of error.

■ Next, petitioners argue that the commission failed to consider and make findings regarding whether the proposed annexation complied with the statewide planning goals as required by ORS 199.462(1) and OAR 191-030-0020(25). Respondents agree that the commission's final order must comply with the goals, but argue that the commission met that requirement by finding that the annexation complied with the city's acknowledged comprehensive plan.

As noted earlier, ORS 199.462(1) requires that, "[i]n order to carry out the purposes described by ORS 199.410," a "boundary commission shall consider local comprehensive planning * * * and the goals adopted under ORS 197.225" in making a boundary change. OAR 191-030-0020(25), a rule adopted by the commission, also regulates the findings required to approve a proposed boundary change. It provides:

> "To adopt a final order approving a boundary change proposal, the Commission must find that the proposal *complies with the statewide planning goals* and is consistent with the applicable acknowledged comprehensive plans and land use regulations as provided in the Commission's State Agency Coordination (SAC) Program, which is hereby

adopted by reference. *Failure of the proposal to be found in compliance with the statewide planning goals* or to be consistent with the acknowledged comprehensive plan and land use regulations will result in denial of the proposal by the Commission."

(Emphasis added.) Under both the statute and rule, then, the commission is required to consider how the proposed annexation complies with the goals in making a boundary change.

Other policies temper the goal consistency requirement. ORS 199.462(1) requires the commission to consider the goals *"in order to carry out the purpose described by ORS 199.410."* (Emphasis added.) ORS 199.410(3)(d) sets out the general policy for local government boundary commissions and provides that one of the purposes of the boundary commission statutes is to

"[p]rovide that boundary determinations are consistent with acknowledged local comprehensive plans and are, in conformance with statewide planning goals. In making boundary determinations the commission shall first consider the acknowledged comprehensive plan * * *. *Only when the acknowledged local comprehensive plan provides inadequate policy direction shall the commission consider the statewide planning goals."*

(Emphasis added.)[3] Thus, ORS 199.462(1)—the statute that requires goal consistency for approval of boundary changes— requires the commission to consider the goals *in order to carry out* the purposes listed in ORS 199.410, which in turn states that the commission should consider the goals *only* when the acknowledged comprehensive plan does not provide adequate policy direction.

Similarly, another administrative rule of the commission rounds out the goal consistency requirement of OAR 191-030-0020(25). OAR 191-005-0060 requires that a boundary commission and staff must make a study of a boundary

---

[3] The Land Conservation and Development Commission (LCDC) rules provide that an " 'Acknowledgment of Compliance' is an order of the Commission issued pursuant to ORS 197.251(1) that certifies that a comprehensive plan and land use regulation, land use regulations or plan or regulation amendment *conforms with the Goals."* OAR 660-003-0005 (emphasis added). An acknowledged comprehensive plan is one that was found by the LCDC to be in compliance with the statewide goals.

change proposal, including an annexation. That rule provides, in relevant part:

> "[T]he study shall consider state planning goals, and county, city, and other applicable plans and policies (ORS 199.410). When considering a boundary change in an area for which there is an acknowledged comprehensive plan, the Commission shall consider the acknowledged plan and *does not have to address statewide goals.*"

OAR 191-005-0060 (emphasis added). Both rules, read in context, reflect the same policy as ORS 199.462 and ORS 199.410, namely, that the acknowledged local comprehensive plan itself addresses the application of the goals to the annexation and further goal findings are necessary only where the plan is inadequate or does not address the area to be annexed.

The commission made findings that applicable policies in the relevant comprehensive plan supported the annexation. Those findings suffice to comply with ORS 199.462(1) and the relevant administrative rules. The commission found that "[t]he annexation area was within the urban growth boundary of the acknowledged 1988 Florence Comprehensive Plan and 2020 Realization Comprehensive Plan," and that the annexation "assisted in fulfilling the comprehensive plans policies of annexing out to the urban growth boundary." The commission also found that the "existing and proposed uses were consistent with the long-range plan for the area and fulfilled the growth policies in the comprehensive plan and in Oregon law." Petitioners do not argue that the acknowledged comprehensive plan was inadequate to provide standards for the annexation or that the annexation was inconsistent with those plan standards. In light of the commission's findings that the annexation complied with the acknowledged comprehensive plan and Oregon law, no further findings addressing state land use goals were necessary for approval of the boundary change.

Finally, petitioners claim that the boundary commission erred in approving an unreasonable annexation under the common-law standard for reasonable annexations announced in *Portland General Electric Co. v. City of*

*Estacada*, 194 Or 145, 159, 241 P2d 1129 (1952). We reiterated in *Morsman v. City of Madras*, 191 Or App 149, 153-54, 81 P3d 711 (2003), that the requirement for reasonable annexations is assessed using specific legislative and regulatory criteria for annexation approvals, rather than through unguided judicial concepts of order or fairness. We continue to hold that view and reject, without further discussion, petitioners' claims about the substantive merits of the annexation.

Affirmed.